## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| TONY R. BARNES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 04-1350-WEB |
| | ) | |
| AKAL SECURITY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion to Compel.  (Doc. 53.)  Plaintiffs filed

their motion on April 27, 2005, seeking a court order compelling Defendants to

answer a litany of discovery requests contained in Plaintiffs' First Set of

Interrogatories and First Request for Production of Documents.  Defendants

responded (Doc. 56), producing some additional documents but maintaining many

of their original objections.  Plaintiffs replied.  (Doc. 57.)

After the Motion to Compel was fully briefed, the Court granted Plaintiffs'

Motion to Amend the Complaint, allowing Plaintiff to add a claim for failure to

properly calculate overtime pay, among other things.  (Doc. 58.)  Because many of

Defendants' objections were based on the scope of the discovery request and the

new claim for failure to properly calculate overtime pay arguably widened the

potential scope of discovery, the Court allowed the parties to provide supplemental

briefing on the Motion to Compel.[1]  (Doc. 67.)

Subsequently, the parties requested several extensions of time for filing such supplemental briefing while they attempted to resolve their disputes without Court intervention.  Those attempts failed and Plaintiffs filed a supplemental reply (Doc. 107), outlining their positions on the remaining discovery disputes.  Plaintiffs also attached a letter from Defendants (Doc. 107-3), which established Defendants' positions on the remaining disputed requests.

Plaintiffs also seek sanctions against Defendants pursuant to Fed. R. Civ. P. 37(a)(4)(A).

The Court has reviewed all of the briefing and attachments and is prepared to rule.

## BACKGROUND

Plaintiffs are suing Defendants for various violations of the Fair Labor Standards Act ("FLSA"),  29 U.S.C. § 201 et seq., alleging that Defendants failed to properly pay Plaintiffs overtime and retaliated against Plaintiffs for asserting their rights under the FLSA.  Defendant Akal Security, Inc. ("Akal") filed a

---

[1]  Interestingly, the added claim was later dropped by agreement of the parties, making the additional briefing superfluous.  (Doc. 99.)

counterclaim for common law fraud.[2]  Plaintiffs' First Amended Complaint (Doc.

59) contains four counts.  Count I was voluntarily dismissed by Plaintiffs.  (Doc.

99.)

In Count II, Plaintiffs allege that Defendants willfully failed to pay Plaintiffs

for their hours worked.  Specifically, Plaintiffs allege that Defendants and their

employees kept false, pre-printed time records and refused to change them to

reflect actual hours worked.

In Count III, Plaintiffs Barnes, Riche, and Borggreen allege that Defendants

retaliated against them for complaining to Akal officials about unpaid overtime.

Borggreen was demoted, and Barnes and Riche were terminated.

In Count IV, Plaintiffs allege that counterclaims filed by Defendants Akal

and Romero in this case were in retaliation against Plaintiffs for filing this suit to

enforce their rights under the FLSA.  Plaintiffs allege that such counterclaims are

---

[2]  Defendants filed two counterclaims with their original Answer.  (Doc. 13.)
Defendant Romero counterclaimed against Plaintiffs Riche and Barnes for defamation
based upon their alleged untrue statements that Romero engaged in sexual harassment
with Akal and while in various military positions.  Akal counterclaimed against Plaintiffs
Riche, Barnes and Borggreen for fraud based upon the allegedly defamatory statements
made about Romero and Akal's reliance upon such statements in initiating an
investigation against Romero.  The parties later stipulated to the release of all claims
against Romero and the dismissal of Romero's counterclaim.  (Doc. 71.)  Defendants'
subsequent Amended Answer to Plaintiffs' Amended Complaint (Doc. 82) did not restate
Akal's remaining counterclaim, but the Court assumes that such counterclaim remains
valid, as it was never dismissed.

baseless and were filed with retaliatory motive.

Akal's counterclaim (Doc. 13 at 25–26) alleges that false allegations made by Plaintiffs Riche and Barnes that their supervisor, Angel Romero, engaged in sexual harassment were intended to and did cause Akal to institute an investigation into the allegations.  Akal further states that Riche, Barnes and Borggreen provided knowingly false information during the investigation, which prolonged the investigation and subjected Akal to unnecessary costs.  Akal claims that such false statements amount to common law fraud and it seeks relief for costs associated with the investigation caused thereby, including lost work time by employees, travel costs, and other expenses.

During discovery, Plaintiffs served their First Set of Interrogatories and First Request for Production of Documents on Defendants, to which Defendants answered in part and objected in part.  Plaintiffs' Motion to Compel originally challenged Defendants' objections to Interrogatories 1, 2, 3, 4, 5, and 6 and Requests 2, 3, 4, 6, 7, 9, 10, 11, 13, 16, 19, 21, and 29.[3]  It appears that the parties have settled their disputes with respect to Interrogatories 2 and 5 and Requests 2, 9,

---

[3] Plaintiffs also note that Defendants objected to Requests 22 and 23, which sought financial information and tax returns from Akal.  Akal objected on the grounds that such information was not relevant because Plaintiffs have not yet made a submissible case for punitive damages.  In their motion, Plaintiffs expressly reserve the right to "request this information again later in the case as necessary or appropriate, as envisioned by defendants in their objections."  (Doc. 54 at 19–20.)

10, 11, and 13.  The Court will examine the remaining discovery requests

individually.

**DISCUSSION**

**A.**   <u>**MOTION TO COMPEL**</u>

The bulk of Defendants' objections relate to the scope of the discovery

requests and the relevance of the information sought.

Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery

regarding any matter . . . that is relevant to the claim or defense of any party."

"Relevancy is broadly construed at the discovery stage of the litigation and a

request for discovery should be considered relevant if there is <u>any possibility</u> that

the information sought may be relevant to the subject matter of the action."

***Audiotext Comm. Network, Inc., v. US Telecom, Inc.,*** No. 94-2395, 1995 WL

625962, at *3 (D. Kan Oct. 5, 1995) (emphasis added) (citing ***Smith v. MCI***

***Telecomm. Corp.***, 137 F.R.D. 25, 27 (D. Kan. 1991)).

In determining whether a request is overly broad, the Court will balance the

burden on the objecting party against the benefit to the discovering party of having

the information."  ***Hoffman v. United Telecomms., Inc.***, 117 F.R.D. 436, 438 (D.

KAN. 1987).   The objecting party has the burden to show why the discovery is

improper.  Id.   Any objections that discovery is unduly burdensome or overly

5

broad must contain a factual basis for the claim (*i.e.*, time it would take to collect the evidence requested or exorbitant costs of retrieving the information requested). *See **Daneshvar v. Graphic Technology, Inc.***, No. 97-2304, 1998 WL 726091, at *1 (D. Kan. Oct. 9, 1998).

### 1.      INTERROGATORY NO. 1

Interrogatory No. 1 asks Defendants to identify, for each discovery request, every person who prepared or assisted in the preparation of the discovery response. Defendants responded by stating that "Mukhtiar Kaur Khalsa, James Kenoyer, and Angel Romero, among others, assisted in these discovery responses." (Doc. 24 at 5.) Plaintiffs claimed that such response was inadequate because it did not identify the "others" who were involved and did not specify who assisted in the responses to each discovery request. Defendants clarified that "among others" referred to attorneys and information that arose from documentation. However, Defendants failed to specify who assisted in the preparation of each individual response.

Such information is reasonably calculated to lead to the discovery of relevant evidence because the requested information indicates the identity of persons having direct knowledge about the subject matter of the specific discovery request. This simply expands upon and refines the requirement of Fed. R. Civ. P. 26(a) that a party disclose the names of persons having discoverable information

concerning the claims and defenses in the case.  Accordingly, Defendants should

supplement their responses to include the names of the individuals who assisted

with the preparation of each individual request.

### 2.    *INTERROGATORY NO. 3*

Interrogatory No. 3 seeks identification of any lawsuits or administrative

claims involving wage payment, sexual harassment or retaliation claims in which

Akal was a party from January 1, 2000 to the present.  Defendants objected that the

requests were overbroad and argues that claims regarding sexual harassment are no

longer valid after the dismissal of Romero and his counterclaim.

With respect to sexual harassment claims, the Court agrees with Plaintiffs

that information regarding sexual harassment claims against Romero is relevant to

Akal's fraud claim.  Clearly, if Plaintiffs can prove that Romero was, in fact,

engaging in sexual harassment, Defendants' counterclaim would fail.  However,

the Court agrees with Defendants that Plaintiffs' interrogatory is overbroad.

Company-wide claims of sexual harassment are not relevant.  The only remaining

issue with respect to sexual harassment is whether Riche, Barnes, and Borggreen

made knowingly false statements that Romero engaged in such improper conduct.

Accordingly, only sexual harassment claims against Romero are relevant.  Thus,

the Court will limit any disclosures to administrative claims or lawsuits against

Akal alleging sexual harassment by Romero.

With respect to wage payment and retaliation claims, Plaintiffs allege that their hours worked were submitted on pre-printed time sheets, which showed that employees worked eight hours per day. (Doc. 59 at ¶ 36). Plaintiffs Barnes and Riche claim to have manually corrected the time sheets to accurately reflect time actually worked prior to submitting them to Romero's office. *Id*. at ¶ 37. However, Plaintiffs claim that the corporate office instructed Romero to inform the employees that they were to submit time sheets without such corrections and prohibited Romero from accepting modified time sheets. *Id*. at ¶ 38.

Riche and Barnes then claim to have sent an anonymous letter to the corporate office, stating that they were not properly being paid overtime. This letter was distributed to Kenoyer and Romero, and Riche and Barnes admitted to their involvement in sending it to the corporate offices. Shortly thereafter, they were terminated, ostensibly for misconduct.

These allegations implicate the corporate office in the alleged practice that denied Plaintiffs overtime pay and resulted in Riche's and Barnes' terminations. Accordingly, information from any Akal workplace whose employees' payroll time sheets are processed through the same corporate office as the Ft. Riley employees' is relevant. The Court finds the January 1, 2000 temporal limitation to

be reasonable, and orders Akal to identify all administrative claims or lawsuits

involving wage payment or retaliation claims in which Akal was a party after that

date.

### 3.    *INTERROGATORY 4*

Interrogatory 4 seeks identification of Ft. Riley employees from January 1,

2002 to present who were disciplined in any manner for misconduct.  Akal

terminated Riche and Barnes purportedly for misconduct.  Accordingly, evidence

of how the same decision-makers treated other employees who were guilty of

misconduct would appear to be relevant.  Defendants argue that the interrogatory is

overbroad in that "it does not set forth comparable reasons as plaintiffs' separation

of employment," apparently arguing Plaintiffs must specify the types of

misconduct committed by the individuals to be identified.  (Doc. 56 at 7.)  The

Court disagrees.

Riche and Barnes may need to show that Akal's purported reason for

terminating them was pretextual, which may involve an analysis of similarly

situated employees who violated work rules of comparable seriousness.  *See*

*Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004) (stating that

pretext may be proven with evidence that similarly situated employees who

violated work rules of comparable seriousness were treated differently than the

9

plaintiff).  Defendants' apparent argument is that not all acts of misconduct are of comparable seriousness.

For a variety of reasons, the Court is not in a position at this early point in the case to decide which acts of misconduct would be comparable to those alleged to have been committed by Riche and Barnes.  Such an analysis is better conducted at the summary judgement stage.  At this point in the litigation, it is sufficient that the Court finds evidence of any misconduct to be reasonably calculated to lead to the discovery of relevant evidence.  Thus, the Court orders Defendants to fully answer Interrogatory No. 4.

### 4.    INTERROGATORY NO. 6

Interrogatory No. 6 asks Defendants to identify all Akal employees who were employed at Ft. Riley and who made complaints relating to gender discrimination or sexual harassment after November 1, 2003.  Defendants object to the interrogatory as irrelevant after the dismissal of Romero and overbroad.  The Court finds that this information is relevant despite the dismissal of Romero because the remaining counterclaim by Akal alleges that Riche and Barnes made knowingly false statements that Romero engaged in sexual harassment.  However, the request is overbroad in that it requests any reports of sexual harassment by anyone at Fort Riley.  Only complaints regarding sexual harassment by Romero are

10

relevant.  Accordingly, the Court orders Defendants to identify any of its Fort

Riley employees who made complaints of sexual harassment against Romero.[4]

### 5.    *REQUEST NO. 3*

Request for Production No. 3 seeks documents concerning any complaint or

investigation in response to a complaint filed by any Akal employee regarding

hours worked or wage payment.  Defendants objected the request as overbroad,

lacking geographic or temporal limitation.  Defendants then responded by

providing "Kenoyer's investigatory file" and stating that they are not aware of any

other wage payment complaints from Fort Riley.  The parties disagree on whether

this request should be limited to complaints at Fort Riley until after the opt-in

period set by the Court has expired.

For the reasons stated above, *see supra* Part 2, the Court finds that the

request is not overbroad for lack of geographic limitations.  Even if persons

employed at the other military installations identified in the Consent Order (Doc.

98 at ¶ 2(a)) did not opt in to this case, this request is calculated to lead to the

discovery of admissible evidence in this case.  However, the request should have

---

[4] The Court notes that Defendants claim to have already provided documents
regarding such complaints at Fort Riley.  If Defendants have provided all responsive
documents consistent with this Order, then Defendants need only certify to Plaintiffs that
all such documents have been produced.

reasonable temporal limitations.  The Court finds that Plaintiffs' temporal

limitation of January 1, 2000, which was applied to Interrogatory No. 3, is

reasonable.  Thus, the Court orders Plaintiffs to provide all responsive documents

based upon complaints made after that date at the military installations identified in

the Consent Order (Doc. 98 at ¶ 2(a)).

### 6.      REQUEST NO. 4

Request for Production No. 4 seeks files and documents relating to the

employment of Barnes, Riche, Borggreen, Romero, and Kenoyer.  Defendants

originally produced the personnel files of Barnes, Riche, and Borggreen.

Defendants later provided Romero's personnel file,[5] but object to producing

Kenoyer's file.  Defendants claim that, "simply being named as a Defendant does

not, in our opinion, entitle the opposing party to examine the contents of a

personnel file."  (Doc. 107-3 at 3.)

While the Court agrees with Defendants' statement, it does not agree that

Kenoyer is "simply" a named Defendant.  Plaintiffs' allege that Kenoyer was

---

[5] Plaintiffs note that they are skeptical about the completeness of Romero's
personnel file because it lacks any documentation relating to Romero's recent
termination.  Defendants state that "[t]o the extent that additional personnel documents
exist relating to Angel Romero's termination, we will produce those documents as well,
but we have no reason to believe additional documents exist at this time."  (Doc. 107-3 at
3.)  Like the Plaintiffs, the Court is curious about the total lack of documentation
regarding the termination of Romero.  Defendants should conduct a diligent search of
their files to ensure that all such documents have been produced.

directly or indirectly involved in the decision to deny Plaintiffs proper overtime pay and to terminate Riche, Barnes, and Borggreen.  (Doc. 59 at ¶¶ 42–44, 48, 49.) Accordingly, Kenoyer's personnel file is discoverable.  *See **Oglesby v. Hy-Vee, Inc.***, Case No. 04-2440, 2005 WL 857036, at *2 (D. Kan. April 13, 2005) ("[G]enerally an individual's personnel file is relevant and/or reasonably calculated to lead to the discovery of admissible evidence, and therefore discoverable, if the individual is alleged to have engaged in the retaliation or discrimination at issue or to have played an important role in the decision or incident that gives rise to the lawsuit."); *see also **EEOC v. Kan. City S. Ry.***, Case No. 99-2512, 2000 WL 33675756, at *3 (D. Kan. October 2, 2000) (requiring production of personnel file of supervisor in Title VII case who made decision to terminate plaintiff's employment).

However, the Court finds that the request is overbroad.  Defendants need not produce every document relating to Kenoyer's employment, which would conceivably include every payroll record, office memo, e-mail, and any other piece of paper with Kenoyer's name on it.  Instead, the Court orders Plaintiffs to provide all documents of the types specifically listed in Request No. 4, *i.e.,* "personnel files, supervisor's files, performance evaluations, disciplinary records, complaints and investigator files."

### 7.    REQUESTS NO. 6 AND 7

Request for Production No. 6 requests all documents relating to any complaints of sexual harassment or gender discrimination made to Akal by any person concerning any Akal employee at Fort Riley.  Defendant objects to Request No. 6 as irrelevant and overbroad.  Request for Production No. 7 seeks all documents relating to sexual harassment or gender discrimination complaints concerning Angel Romero.  Defendants direct Plaintiffs to the Kenoyer investigatory file.

As stated above, *see supra* Part 4, only sexual harassment complaints made against Romero are relevant.  Accordingly, the Court DENIES the motion to compel Request No. 6, but orders Defendants to provide all documents responsive to Request No. 7.  If the Kenoyer Investigatory file constitutes a complete response, then Defendants need only confirm that fact.

### 8.    REQUEST NO. 16

Request for Production 16 seeks every document or thing relating to any litigation or administrative complaint filed since January 1, 2002 concerning wage payment issues, retaliatory discharge or sexual harassment.  Defendants apparently produced such documents as to matters arising out of Fort Riley, but object to the request as it pertains to other locations.  Defendants state that they would be

14

willing to provide such information after the opt-in period for locations at which people opt-in. Plaintiffs argue that the information is relevant regardless of whether other employees opt-in.

As previously stated, *see supra* Part 2, the only evidence relating to sexual harassment that is relevant to the remaining claims is evidence regarding sexual harassment by Romero. Presumably, such information is covered by Request No. 7. *See supra* Part 7. Thus, this portion of the request is DENIED as superfluous.

Also as previously stated, *see supra* Part 2, Plaintiffs allege that the decision to not pay overtime for time worked was made at the corporate office. Therefore, evidence that similar decisions were made regarding other locations is relevant. Accordingly, the Court orders Plaintiffs to provide all responsive documents pertaining to wage payment and retaliation claims.

### 9. REQUEST NO. 21

Request for Production No. 21 seeks all documents that reflect the corporate structure, ownership, and/or management of Akal from January 1, 2002, to the present. Defendants object that the information is irrelevant, but state that it has no responsive documents that show its "corporate (as opposed to command) structure." (Doc. 107-3 at 4.) While the Court questions Defendants' relevance objection, Defendants claim that they possess no such documents. The Court,

15

however, is concerned by Defendants' apparent attempt to distinguish corporate structure from command structure.  This request includes a request for the management of Akal which would seem to include what Defendants' apparently define as "command structure."  Defendants should reexamine this request to assure that they in fact have no documents that are responsive, and should thereafter supplement their response.

### 10.    *REQUEST NO. 29*

Request for Production No. 29 seeks from Kenoyer all documents relating to his employment with Akal.  Defendants object to the request as irrelevant and overly broad.  The Court agrees with Defendants.  The request clearly encompasses every scrap of paper in Kenoyer's possession that relates to his work, such as pay stubs and benefit information that are clearly not relevant to this matter.  Furthermore, Plaintiffs provide no further guidance for Defendants or this Court to narrow the search in any reasonable way.  Accordingly, this Plaintiffs' Motion is DENIED with respect to this request.

## B    SANCTIONS

Plaintiff seeks sanctions under Fed. R. Civ. P. 37(a)(4)(A), which provides the standards for sanctions where a motion to compel is granted.  However, the

Court granted in part and denied in part Plaintiffs' Motion, making Fed. R. Civ. P. 37(a)(4)(C) applicable.

Fed. R. Civ. P. 37(a)(4)(C) provides that where a discovery motion is granted in part and denied in part, the Court "may, after affording an opportunity to be heard,[6] apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner."  "Whether or not to impose sanctions addresses the discretion of the court."  *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976).  The Court must consider on a case-by-case basis whether the party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate.  *Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 646 (D. Kan. 1999).

In this instance, the Court finds that it is appropriate for the parties to bear their own costs in making and defending this motion.  Plaintiffs' request for sanctions is, therefore, DENIED.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel is

---

[6] An actual hearing is not necessary to satisfy the "opportunity to be heard" requirement of Rule 37.  *Moore v. Ransom Memorial Hosp.*, Case No. 05-2025, 2005 WL 2925060, *1 (D. Kan. Nov. 4, 2005).  The Court may consider the issue of expenses on written submissions, which requirement is met where the moving party requests expenses in its motion or supporting brief and the opposing party is given the opportunity to submit a brief in response.  *Id.*

GRANTED in part and DENIED in part, as set out in this Order.

**IT IS FURTHER ORDERED** that Plaintiffs' request for sanctions is

DENIED.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas on this _____ day of December, 2005.

DONALD W. BOSTWICK
United States Magistrate Judge